FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

99 MAR -1  AM 9: 16

U.S. DISTRICT COURT
N.D. OF ALABAMA

REJETTA A. POOLE, }
}
    Plaintiff, }
}
v. } CASE NO. CV 96-B-156-NW
}
BIG RIVER BROADCASTING }
CORPORATION, }
} **ENTERED**
    Defendant. }

MAR 0 1 1999

## MEMORANDUM OPINION

Currently before the court is the motion of defendant Big River Broadcasting Corporation ("Big River" or "defendant") for summary judgment. Upon consideration of the record, the submissions of the parties, the argument of counsel, and the relevant law, the court is of the opinion that defendant's motion is due to be granted.

This dispute arises out of plaintiff Rejetta A. Poole's ("Poole" or "plaintiff") employment with defendant. Poole alleges that defendant's discriminatory employment practices violated her civil rights. She brings claims against defendant under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981 ("§ 1981"), and the Americans with Disabilities Act ("ADA"). Defendant denies any unlawful employment practices.

### FACTUAL SUMMARY

Big River hired Poole, an African-American female, in March or April, 1990, as an account executive to sell advertising. (Thomas Aff. ¶ 2; Poole Aff. ¶ 1.) Prior to April 1, 1993, Poole was employed full time and was compensated at the rate of fifteen percent of net sales, with a base draw of $800.00 guaranteed. (Thomas Aff. ¶ 3; Poole Dep. 156.) During

this time, Poole was also eligible to participate in the group health insurance plan with one-half the premium being paid by Big River. (Thomas Aff. ¶ 3.) This initial compensation package was the same as other full-time account executives at Big River. (Thomas Aff. ¶ 3.)

At all times pertinent to this lawsuit, Bill Thomas was the General Manager of Big River. His duties included managing the day to day affairs of Big River and supervising its personnel. (Thomas Aff. ¶ 1.) In March of 1993, Bill Thomas made the decision to modify Poole's employment status. (Thomas Aff. ¶ 4.) He then offered Poole the following options: (1) continue to be employed on a full time basis, subject to a 90 day probationary period wherein she would be required to meet minimum sales quotas sufficient to cover her draw, attend sales meetings, fill out required sales reports, and be regular in her attendance; (2) opt for part time, commission only status where she would be allowed to work at her own convenience; however, this option would result in the loss of eligibility in the group insurance plan; (3) resignation; or (4) termination. (*Id.*) Thomas claims that the proposed change in Poole's employment status was based on poor sales performance and excessive absenteeism. (*Id.*) Thomas further states that Poole's change in employment status was dictated by Big River policy, which requires that new employees and employees consistently exhibiting substandard performance be placed on a 90 day probationary period. (Thomas Aff. ¶ 4.) Poole claims that the excessive absenteeism was due to her being injured in a car accident and the resulting treatment. (Poole Aff. ¶ 4.)

Poole elected to go on part time, commission only status effective April 1, 1993, with the option to return to full time status at any time. (Thomas Aff. ¶ 5.) Subsequent to electing to work part time, Poole requested to be reinstated to full time status. (Poole Dep. 166.)

2

Thomas then informed Poole that, as a full time employee, she would have to work all day, meet sales quotas, be present for sales meetings, and fill out daily call reports. (Poole Dep. 166-170.) Poole admits that these requirements were imposed upon all account executives at Big River. (Poole Dep. 167-169.) However, Poole also alleges that other employees were not required to meet the sales quota Poole was required to meet in order to retain her position and base salary. (Poole Aff. ¶ 3.)

On January 1, 1995, Poole elected to return to full-time status. However, after a few weeks she requested a return to part time status. (Thomas Aff. ¶ 6.) Poole has continued to be employed on a part time, commission only status and retains the option of returning to full time status, subject to a 90 day probationary period. (Thomas Aff. ¶ 6.)

The basis for Poole's allegation of race and gender discrimination is the wrongful taking of accounts from her. (Poole Dep. 154, 189.) Poole states that she has been "badgered and discouraged" by the unfair reassignment of some of her best accounts. (Poole Aff. ¶ 9.) Poole further states that management and Thomas harassed her in an effort to have her quit her job. (Poole Aff. ¶¶ 8, 9.)

Big River policy is to permit account executives to build and maintain exclusive client lists. However, if an advertising client expresses dissatisfaction with the assigned account executive, the account will be reassigned in accordance with the client's desires. (Thomas Aff. ¶ 7.) An account will also be reassigned if an account executive no longer wishes to service the account or if the account has no activity for 90 days. (Thomas Aff. ¶ 7; Poole Dep. 44, 45.) According to Thomas, accounts have been involuntarily reassigned from Poole to other employees both at the request of advertising clients and pursuant to Big River's 90 day

3

rotation policy. (Thomas Aff. ¶ 8.)

Additionally, Poole states that the defendant discriminated in not providing her with insurance and taking away her base salary. (Poole Dep. 184, 242.) However, Poole acknowledges that she is a part time employee and that this is a reason she is not entitled to insurance benefits. (Poole Dep. 184.) Poole has not been denied promotion to a different position at Big River. (Poole Dep. 241, 242.) Poole has not been denied training at Big River. (Poole Dep. 242, 243.)

Poole also alleges that she has a disability because she suffers from fibromyalgia, which causes severe back pain, limitation of movement, and fatigue. (Am. Compl. ¶ 20.) Poole further alleges that she suffers from a bulging disc and related nerve damage. (Id.) Although Poole maintains that Big River was aware of her injuries and disability because they had access to her medical records and because Bill Thomas was present when a receptionist had to take Poole to receive treatment, Poole has testified that she never presented her employer with a report from any of her doctors setting forth her condition. (Poole Aff. ¶¶ 6,7; Poole Dep. 111.)

Poole has testified that the only requirement of her job that requires lifting is carrying her briefcase and that she could do so as long as it was not "overloaded." (Poole Dep. 116.) Poole further testified that her job does not require her to sit for any extended period of time without being able to get up and move around. (Poole Dep. 118, 119.) Poole also states that her job does not require her to stand for a period of time longer than she is able. (Poole Dep. 120.) Although Poole's condition has, at times, limited her ability to drive, Poole has never been informed by a doctor that she cannot drive. (Poole Dep. 120-125.) Poole further

4

testified that her job did not impose walking requirements that she was unable to meet. (Poole Dep. 146.)

## SUMMARY JUDGMENT STANDARD

Under FED. R. CIV. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment "bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23; *see* FED. R. CIV. P. 56(a) and (b).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial,'" *Celotex*, 477 U.S. at 324. The nonmoving party need not present evidence in a form necessary for admission at trial; however, the movant may not merely rest

5

on the pleadings. *Id.*

After a properly made motion has been properly responded to, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.

The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. A judge's guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 259; *see Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11 (1983). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence

6

presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

On November 16, 1997, Poole (now known as Rejetta A. Gholston) filed an Affidavit purporting to set forth additional allegations of retaliation. Attached to the Affidavit are numerous handwritten notes by the plaintiff. This Affidavit was not timely filed and was subsequent to the date the attorneys were advised by the court that defendant was entitled to summary judgment on all claims filed by Poole. Even considering the untimely filed Affidavit, plaintiff has not produced any evidence creating a genuine issue of material fact on any of her claims.

## DISCUSSION

### I. Title VII Claims

Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . ." 42 U.S.C. § 2000e-2(a)(1). As an employer of fifteen or more employees, Big River constitutes an employer that is subject to liability under Title VII. 42 U.S.C. § 2000e(b).

7

Poole's allegations of discrimination consist mainly of claims that advertising accounts were wrongfully assigned or reassigned. Poole claims disparate treatment because, unlike similarly situated white and/or male account executives, accounts were unfairly assigned or reassigned and her $800.00 salary draw was taken away at the time she was placed on part time status, all in violation of Title VII. Poole also claims that Big River retaliated against her for filing a charge of discrimination against Big River in May, 1994. Again, Poole claims that such retaliation consisted of wrongful assignment and reassignment of accounts, taking away her $800.00 salary draw, and denial of insurance benefits. Big River's Motion for Summary Judgment as to these claims is due to be granted as a matter of law because Poole has failed to raise a genuine issue as to any material fact concerning her Title VII claims.

A.  Discriminatory Treatment

In any action alleging disparate treatment by an employer, the plaintiff must prove that the employer acted with a discriminatory motive. *International Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 at n.15 (1977). To establish a prima facie case of discrimination, a plaintiff may employ direct, statistical, or circumstantial evidence. *Verbreaken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045, cert. dismissed, 493 U.S. 1063 (1990). A prima facie case simply requires evidence that is adequate to create an inference of illegal discrimination. *International Bhd. of Teamsters,* 431 U.S. at 357 (1977).

Poole has presented neither statistical evidence nor direct evidence of discrimination. Thus, the court will examine the evidence under the allocation of burdens and order of presentation of proof for Title VII disparate treatment cases set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-804 (1973) and *Texas Dep't of Community Affairs v.*

*Burdine*, 450 U.S. 248, 252-53 (1981). The framework developed in *McDonnell Douglas Corp.*, is meant to be flexible and may be applied to a wide variety of factual circumstances. Here, modifying the elements of the *McDonnell Douglas* framework, Poole could establish a prima facie case by showing that: (1) she is a member of a protected class; (2) she was adversely affected by an employment decision; and (3) a similarly situated employee outside the protected class was not adversely affected.

Applied to this case, the court finds that Poole has failed to meet her initial burden of establishing a prima facie case of discrimination. Although she is a member of two protected classes as an African American female, there is simply no evidence that there was an adverse employment decision affecting her because of her race or gender. Poole alleges discrimination in the assignment and reassignment of accounts; however, Poole has not disputed Big River's policy concerning the assignment and reassignment of client accounts. Specifically, Big River policy is to permit an account executive to build and maintain exclusive client account lists, provided, if a client expresses dissatisfaction with the assigned representative, the account will be reassigned; if an account executive no longer wishes to service a particular account, the account will be reassigned; and, further, if an account has no activity for 90 days, it will be subject to reassignment. (Thomas Aff. ¶ 7.) Everyone working as a salesperson for Big River was subject to this policy. (Poole Dep. 45.) Poole testified that she has had accounts reassigned to her pursuant to Big River's 90 day rotation policy. (Poole Dep. 83.) The assignment and reassignment of accounts to Poole have been pursuant to Big River policy. (Thomas Aff. ¶ 8.) Poole has failed to cite any specific instance where an account has wrongfully been assigned or reassigned to another person because of race or gender. Because

9

Big River's assignment and reassignment policy was applied to Big River employees indiscriminately, plaintiff cannot establish a prima facie case of race or sex discrimination under Title VII.

Poole also alleges that Big River discriminated against her by taking away her salary draw and insurance benefits when she elected part time status. However, Poole has not disputed Big River's distinction between full time employees and part time or probationary employees. Big River policy dictates that all employees electing part time or probationary status lose their salary draw and insurance benefits. Poole has not contested the fact that she elected probationary or part time status with the knowledge that she would lose her $800.00 draw and eligibility for participation in the group insurance plan. Poole has not produced any evidence of another person receiving a salary draw or insurance benefits while on probation. Therefore, plaintiff has failed to carry her ultimate burden of proving that plaintiff's race or gender was a determinative factor in Big River's decision to place her on part time status.

Poole has failed to produce any evidence of discriminatory practices on the part of Big River. However, even if Poole were able to establish a prima facie case of discrimination under Title VII, the court finds that Big River has articulated a legitimate, non-pretextual reason for changing Poole's employment status. Big River's general manager, Bill Thomas, has stated that Poole was relegated to part time status as a result of poor performance and excessive absenteeism. (Thomas Aff. ¶ 4.) Poor performance and excessive absenteeism constitute legitimate reasons for taking disciplinary action against an employee. Therefore, the court finds that Big River has articulated a legitimate, non-discriminatory reason for changing plaintiff's employment status and plaintiff has failed to establish that such proffered reason was

pretextual. Thus, Big River's Motion for Summary Judgment as to plaintiff's claims of discriminatory treatment under Title VII is due to be granted.

### B. Retaliation

Poole alleges that she has been subject to retaliation by Big River as a result of her filing a charge of discrimination against Big River in May of 1994. Again, Poole's retaliation claim consists of allegations that Big River wrongfully assigned and reassigned accounts, took away her $800.00 salary draw, and denied her insurance benefits. (Am. Compl. ¶ 13.) Poole also alleges that Big River retaliated against her by failing to accommodate her disability. *Id.*

Title VII prohibits an employer from taking adverse employment action against an employee in retaliation for her opposition to discriminatory practices. 42 U.S.C. § 2000e-3(a). To establish a prima facie case of unlawful retaliation in violation of Title VII, a plaintiff must show that: (1) the plaintiff engaged in statutorily protected activity; (2) the employer was aware of that activity; (3) the plaintiff suffered adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action. *Reynolds v. CSX Transp., Inc.*, 115 F.3d 860, 868 (11th Cir. 1997)(citation omitted). Applying this standard to Poole's claim of retaliation, the court finds that Poole has failed to establish a prima facie case.

Poole's filing of a charge of discrimination against Big River does constitute protected activity and thus satisfies the first element of her prima facie case. However, plaintiff cannot establish the third element of her prima facie case because there is no evidence of an adverse employment action on the part of Big River. Again, the assignment and reassignment of accounts was pursuant to well established company policy. Poole's placement on probationary

11

status, with her consent, and the resulting loss of salary draw and insurance was pursuant to established company policy. Even assuming that Poole could show that Big River took any adverse employment action against her, Poole has also failed to produce evidence of a causal connection between her protected activity and any adverse employment action taken against her. Thus, the court concludes that Poole has not satisfied her burden of establishing a prima facie case and, therefore, Big River's Motion for Summary Judgment on Poole's retaliation claim is due to be granted.

## II. Section 1981 Claims

Section 1981 prohibits race discrimination in the making and enforcement of contracts. 42 U.S.C. § 1981(a). Although Poole makes no distinction between her § 1981 claims and Title VII claims, only Poole's claims of racial discrimination are actionable under § 1981. *See Runyon v. McCrary*, 427 U.S. 160, 167 (1976); *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 459 (1975); *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 436 (1968).

A plaintiff must prove intentional discrimination to prevail under § 1981. *General Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982); *Patterson v. McLean Credit Union*, 491 U.S. 164, 186 (1989). The Supreme Court has held that the standards for testing disparate treatment under Title VII fully apply to § 1981 claims. *See Patterson*, 491 U.S. at 186-88 (approving application of the *McDonnell Douglas/Burdine* approach to § 1981 cases); *accord Brown v. American Honda Motor Co.*, 939 F.2d 946, 949 (11th Cir. 1991). *See also Reynolds v. CSX Transp., Inc.*, 115 F.3d 860, 866 (11th Cir. 1997) (equating § 1981 hostile environment standards with Title VII hostile environment standards). The court's previous analyses of Poole's Title VII claims are dispositive of Poole's § 1981

12

claims of discrimination and retaliation. Therefore, the court concludes that Big River's Motion for Summary Judgment with respect to Poole's § 1981 claims is due to be granted.

## III. Americans With Disability Act Claims

The ADA prohibits discrimination in private employment against those who are disabled, or who are perceived as disabled. 42 U.S.C. §§ 12101-12213. Specifically, 42 U.S.C. § 12112(a) states the general rule concerning employers' compliance with the ADA:

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a).

Furthermore, 42 U.S.C. § 12112(b) construes the term "discriminate" to include:

> (1) limiting, segregating, or classifying a job applicant or employee in a way that adversely affects the opportunities or status of such applicant or employee because of the disability of such applicant or employee;

and:

> (5)(A) not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity; or

> (B) denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant.

42 U.S.C. § 12112(b)(1) and § 12112(b)(5)(A)-(B). Poole alleges that Big River has violated the above cited statutes of the ADA and, further, retaliated against her because of her discrimination claims. (Am. Compl. ¶¶ 19-28.)

To establish a prima facie case of discrimination under the ADA, Poole must demonstrate that (1) she had a disability; (2) that she was a qualified individual; and (3) that she was subjected to unlawful discrimination by her employer as a result of her disability. *Holbrook v. City of Alpharetta, GA.* 112 F.3d 1522, 1526 (11th Cir. 1997)(citation omitted).

Poole is unable to establish the first element of her prima facie case because she has failed to produce evidence that she suffered from a disability as that term is defined by the ADA. The EEOC has implemented regulations to be used in interpreting the terms of the ADA. *See* 29 C.F.R. §§ 1630.1-1630 app. (1998). Those regulations define a physical or mental impairment as being a physiological disorder or condition which affects at least one body system or as being a mental or psychological disorder. 29 C.F.R. § 1630 app. § 1630.2(h)(1998). When the impairment substantially limits a person in one or more of her major life activities, it rises to the level of a disability. 29 C.F.R. § 1630 app. § 1630.2(j)(1998). Basic activities which the average person in the community can perform with little or no difficulty — such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, working, sitting, standing, lifting, and reaching — are considered major life activities. 29 C.F.R. § 1630 app. § 1630.2(i)(1998).

According to Poole's own testimony, her condition does not substantially limit any major life activities, and therefore does not rise to the level of a disability as that term is defined under the ADA. Poole admits in her testimony that her alleged condition did not

affect her ability to work for Big River. Specifically, Poole testified that the nature of her employment did not require her to lift anything, other than her briefcase, and that she was able to do so as long as it was not overloaded. (Poole Dep. 116.) Poole testified that there was no requirement for her to sit for any designated period of time in her employment and that she was able to get up and move at any point she desired to. (Poole Dep. 118-19.) Poole testified that there was nothing in her job that required her to stand for any period of time longer than she was able to and, further, any standing limitation did not interfere with her ability to perform her job. (Poole Dep. 120.) Poole testified that her job did not impose walking requirements she was unable to meet. (Poole Dep. 146.) Poole testified that her job did not require performance of medium or heavy labor. (Poole Dep. 152-53.) Without making a determination of whether or not Poole suffers from a nerve condition, fibromyalgia, and resulting fatigue, the court finds that Poole has not produced any evidence that she is disabled within the meaning of the ADA.

Poole is also unable to establish the third element of her prima facie. Her testimony indicates that she never presented any reports from physicians to Big River setting forth her condition. (Poole Dep. 111.) Poole's reliance on Big River having "access to and the authority to request any and all medical records" and/or Bill Thomas being present when a receptionist took her to treatment is not notice of her disability. (*See* Poole Aff. ¶¶ 6,7.) In fact, there was a determination that Poole did not have a claim for worker's compensation. (Poole Dep. 111.) Thus, Poole has produced no evidence showing that Big River knew about Poole's alleged disability. Without any evidence that Big River was aware of Poole's condition, a reasonable jury could not conclude that Big River discriminated against Poole as a

result of her disability. Poole's ADA claim fails because Poole is unable to establish the first and third elements of her prima facie case.

When bringing claims under the ADA, an employee must, as part of her burden of production, "identify the accommodation that would allow the employee to perform her job duties and must, as a part of the burden of proving her case, establish that the accommodation is reasonable." *Willis v. Conopco, Inc.*, 108 F.3d 282, 283 (11th Cir. 1997). Even assuming Poole has a disability affecting her ability to work, Poole has failed to identify what accommodations she claims to be necessary to be able to perform her job duties with her alleged disability. Thus, Big River is entitled to summary judgment on Poole's claim under the ADA.

## CONCLUSION

Poole's evidence raises no genuine issues of material fact regarding any of her claims and Big River is entitled to judgment as a matter of law. An order in accordance with this memorandum opinion will be entered contemporaneously herewith.

**DONE** this 1st day of March, 1999.

_____
**SHARON LOVELACE BLACKBURN**
United States District Judge